UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERVIN JACK, JR.                                     CIVIL ACTION

VERSUS                                              No. 22-1520

EVONIK CORPORATION, ET AL.                          SECTION: "J"(2)

## ORDER & REASONS

Before the Court are two *Rule 12(b)(6) Motions to Dismiss* **(Rec. Docs. 4 & 12)**
filed, respectively, by Defendant, Shell Oil Company ("Shell"), and Defendant, Evonik
Corporation ("Evonik") (collectively "Defendants"). Plaintiff, Ervin Jack, Jr., opposes
both (Rec. Docs. 8 & 13). Each Defendant has filed a reply (Rec. Docs. 11 & 16). Having
considered the motions and legal memoranda, the record, and the applicable law, the
Court finds that both Shell and Evonik's motions should be granted.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of alleged exposure to ethylene oxide ("EtO") near a
petrochemical plant in Reserve, Louisiana ("the facility"), owned and operated by
Defendants, Evonik and Shell. Shell owned and operated the facility from 1991 until
1999, and Evonik has owned and operated the facility since that time. Plaintiff, Ervin
Jack, Jr., individually and on behalf of his deceased wife, Leander Cook Jack, alleges
that emissions of EtO from the facility caused Mrs. Jack's breast cancer and
subsequent death in 2000.

Originally, this suit consisted of fourteen plaintiffs. The plaintiffs were
Louisiana residents who lived within seven miles of the facility and who have either

contracted cancer or have a spouse die from cancer, allegedly because of unknowing exposure to dangerous levels of EtO emitted by the facility. On April 26, 2021, the original plaintiffs filed suit in the Civil District Court for the Parish of St. John the Baptist, alleging that inhalation of EtO emitted from the facility was a substantial factor in causing plaintiffs' cancer, or their spouses' cancer. On June 4, 2021, Evonik removed the case to federal court, contending that the plaintiffs improperly joined non-diverse employee defendants, and the case was allotted to Judge Sarah Vance. On October 19, 2021, Judge Vance denied plaintiffs' motion to remand the case and dismissed plaintiffs' claims against the improperly joined employee defendants.

On November 5, and 9, 2021, respectively, defendants Shell and Evonik filed motions to dismiss plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both Defendants contended that plaintiffs' claims against them were time-barred because suit was filed after the termination of plaintiffs' one-year prescriptive period. Defendants additionally asserted that the claims must be dismissed on the merits, because the plaintiffs did not state a claim for negligence, battery, or nuisance under Louisiana law.

On May 27, 2022, Judge Vance granted Shell's motion to dismiss without prejudice reasoning that the claims were prescribed, but she granted plaintiffs' leave to amend their original complaint to plead facts, specific to each plaintiff, to support the application of the doctrine of *contra non valentem*. Judge Vance also granted in part Evonik's motion to dismiss. She (1) denied the motion as to plaintiffs' continuing tort claims under Louisiana's vicinage articles; (2) granted the motion and dismissed

with prejudice the claim of civil battery; and (3) granted the motion and dismissed without prejudice the negligence claims finding that the plaintiffs had not stated a claim for negligence under Louisiana law because they had no specific standard of care with which Evonik ought to have complied. However, she granted plaintiffs' leave to amend their original complaint to include negligence allegations that articulate a specific standard of care that Defendants are alleged to have breached. Finally, Judge Vance severed the plaintiffs into fourteen distinct civil actions. Plaintiff, Ervin Jack, Jr., was allotted to this Court. He subsequently filed an amended complaint pursuant to Judge Vance's Order & Reasons, and Shell and Evonik filed the instant motions to dismiss for failure to state a claim. Because each motion involves overlapping issues, the Court will address both motions together.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor

of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

The three main questions before the court are 1) whether Plaintiff's claims are prescribed, 2) whether Plaintiff's amended general negligence allegations articulate a specific standard of care and breach of that standard, and 3) whether Plaintiff properly stated a claim under Articles 667-669.

## I.   PRESCRIPTION

Both Shell and Evonik contend that Louisiana's one-year prescriptive period applicable to delictual actions time-bars all of Plaintiff's claims. (Rec. Doc. 4-1, at 1); (Rec. Doc. 12-1, at 4). In opposition, Plaintiff argues that the prescriptive period was suspended under the doctrine of *contra non valentem* as to both Shell and Evonik and under the continuing tort doctrine as to Evonik. (Rec. Doc. 8, at 4); (Rec. Doc. 13, at 5, 8).

Article 3492 of the Louisiana Civil Code provides that "[d]elictual actions are subject to a liberative prescription of one year." La. Civ. Code art. 3492. This period "commences to run from the day injury or damage is sustained." *Id.*; *see also Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995) (quoting La. Civ. Code art. 3492). "Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual

of a cause of action." *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993) (citing *McCray v. N.E. Ins. Co.*, 579 So. 2d 1156 (La. App. 2 Cir. 1991)). Similarly, survival and wrongful death actions are subject to a prescriptive period of one year from the date of death. La. Civ. Code art. 2315.1(A) (governing survival actions); La. Civ. Code art. 2315.2(B) (governing wrongful-death actions). Here, Plaintiff filed suit on April 26, 2021. (Rec. Doc. 4-1, at 1). Plaintiff's complaint states that his wife died from breast cancer in 2000 but fails to allege the date of her diagnosis. (Rec. Doc. 2, at 13). Nonetheless, because she died in 2000, her diagnosis must have predated the April 26, 2020 cutoff required to render this suit timely. Accordingly, unless the one-year period was suspended or another exception applies, all of Plaintiff's claims are prescribed. Plaintiff does not dispute this proposition, but he argues that the prescriptive period was suspended under the doctrine of *contra non velentem* and the continuing tort doctrine. (Rec. Doc. 8, at 4); (Rec. Doc. 13, at 3).

## A. Contra Non Valentem

Under Louisiana law, *contra non valentem* is a doctrine that tolls the statute of limitations and is thus "an exception to the general rules of prescription." *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994). This doctrine suspends the prescriptive period under certain circumstances, including situations in which the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002). But this exception, sometimes known as the "discovery rule," is available only in "exceptional circumstances." *Meggs v. Davis Mortuary Serv., Inc.*,

301 So. 3d 1208, 1213 (La. App. 5 Cir. 2020) (quoting *Renfroe*, 809 So. 2d at 953). Courts assessing the applicability of contra non valentem must focus on the reasonableness of the tort victim's action or inaction. *See Griffin v. Kinberger*, 507 So. 2d 821, 824 n.2 (La. 1987). As the Louisiana Supreme Court has explained:

> Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. *On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.*

*Jordan v. Emp. Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987) (emphasis added).

The law is clear that the prescriptive period begins to run once a party has "constructive knowledge . . . of the facts that would entitle him to bring a suit," even if he does not have actual knowledge of those facts. *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002). "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at 510–11. "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead," and therefore "is sufficient to start running of prescription." *Id.* at 511 (citations omitted); *see also Meggs*, 301 So. 3d at 1213 ("If the plaintiff could have discovered the cause of action by exercising reasonable diligence, the doctrine will not prevent the running of prescription.") (citations omitted); *Miles v. MEMC Pasadena, Inc.*, No. 08-4436, 2009 WL 1323014, at *3 (E.D. La. May 8, 2009) ("The plaintiff must show that the cause of action for his injuries was not reasonably knowable. This is a heavy burden."). The discovery rule provides that, for prescription to run, a plaintiff must have actual or constructive notice of the "tortious act, the damage caused by the

tortious act, and the causal link between the act and the damage." *Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th Cir. 1992) (citing *Knaps v. B & B Chem. Co.*, 828 F.2d 1138, 1139 (5th Cir. 1987)).

The question here is thus whether Plaintiff's wife's cancer diagnosis and death put him "on guard and call[ed] for inquiry," such that he had constructive knowledge of his survival and wrongful death causes of action against Shell and Evonik. If he had constructive knowledge as of the date of his wife's diagnosis and subsequent death, then *contra non valentem* does not save his otherwise untimely claims.

To begin, Plaintiff alleges that the deleterious properties of EtO "have been widely known for decades in the industrial community, but not to the general public." (Rec. Doc. 2, at 5). He intricately details the how the carcinogenic effects of EtO have been known and publicized for decades. (*Id.* at 5–7, 8–9). In fact, Plaintiff alleges that, at least as recently as 2018, it was knowable to the public that persons living in the same area as Plaintiff face higher cancer risks from EtO. (*Id.* at 8). Despite Plaintiff's own recitation of the carcinogenic effects of EtO that have been known and publicized for decades, he argues that *contra non valentem* should apply to toll his liberative prescriptive period because he could not reasonably have known of these effects. (Rec. Doc. 8, at 4). The crux of Plaintiff's argument is that all of this information was "not communicated to any lay persons and the citizens of St. John the Baptist Parish . . . until 2021, when the first public outreach community meeting was organized by the EPA to inform local residents of the risk faced from living near the facility." (*Id.* at 9).

In response, Shell argues that a medical diagnosis, in and of itself, constitutes constructive notice of a cause of action and triggers the duty to investigate. (Rec. Doc. 4-1, at 6). Moreover, Evonik contends that Plaintiff's First Amended Complaint lacks any factual allegations regarding the steps Plaintiff and his wife took at the time of her diagnosis, or in the years following, to investigate a potential cause of her cancer. (Rec. Doc. 12-1, at 9). Accordingly, both Shell and Evonik assert that, at the time of Mrs. Jack's cancer diagnosis and death in 2000, Plaintiff, individually and in his capacity as beneficiary of Mrs. Jack's cause of action, had constructive notice sufficient to trigger the running of prescription. (Rec. Doc. 4-1, at 6); (Rec. Doc. 12-1, at 11). Because suit was not timely filed within one year of this constructive notice, Shell and Evonik aver that Plaintiff's claims are time-barred. (*Id.*). In opposition, Plaintiff argues that his inaction is reasonable in light of he and his wife's education, intelligence, and the nature of Shell and Evonik's conduct. (Rec. Doc. 13, at 5). Plaintiff and his late wife, he contends, are lay people and members of the general public who were unaware of the EtO emissions because it is undetectable by sight or smell. (*Id.*). Moreover, he asserts that they have no background or training in chemistry so "they could not have asked her physicians about possible causation related to EtO." (*Id.* at 6).

State and federal case law regarding prescription and *contra non valentem* strongly suggest that a medical diagnosis puts a plaintiff on constructive notice of her cause of action, and thereby starts the prescriptive period. For instance, in *Tenorio v. Exxon Mobil Corp.*, the plaintiff argued that *contra non valentem* applied because he

did not know what caused his throat cancer, diagnosed in November of 2009, until he was told in August of 2013 that he may have been exposed to radiation at the job where he worked from 1981 to 1988. 170 So. 3d 269, 275 (La. App. 5 Cir. 2015). The Louisiana Fifth Circuit Court of Appeals rejected the argument and found that the plaintiff's 2009 cancer diagnosis "was constructive notice sufficient to put [him] on guard and to call him to inquire into the cause of his condition." *Id.* The court went on to say that "[a]lthough [the plaintiff] claims to not have had knowledge of the radiation exposure at Alpha Tech, the commencement of prescription began when he should have discovered the facts upon which his cause of action was based, which was in November 2009." *Id.*

Similarly, in *Lennie v. Exxon Mobil Corp.*, the court rejected the plaintiffs' invocation of *contra non valentem* and found that the decedent's diagnosis of lung cancer constituted constructive knowledge of his cause of action. 251 So. 3d 637, 648 (La. App. 5 Cir. 2018). The court explained that the doctrine was inappropriate in that case for many reasons:

> [Plaintiffs] have offered no evidence as to what they understood caused [decedent]'s lung cancer and subsequent death. There is no evidence that they reasonably relied on a doctor's explanation as to the cause of [decedent]'s lung cancer; to the contrary, they testified that they did not speak with [decedent]'s doctors about what caused his cancer. Evidence was introduced that [decedent] was a heavy smoker, but none of the [plaintiffs] stated that they believed that smoking caused the decedent's lung cancer. Additionally, none of the [plaintiffs] stated that they had a conversation with [decedent] himself as to what he believed caused his lung cancer. Each of them testified that they made no inquiry whatsoever into the cause of [decedent]'s lung cancer. While under the facts of this case it may not have been reasonable for the [plaintiffs] to contact [decedent]'s former co-workers following his death from lung cancer when they had no knowledge of [naturally occurring radioactive

material], its hazardous effects, or of [decedent]'s potential exposure to it at the workplace, their failure to make even a rudimentary inquiry into the causes of [decedent]s' illness and death appears unreasonable.

*Id.* at 647-48 (footnotes omitted). The court therefore held that decedent's "diagnosis of lung cancer in January 2010 was constructive notice sufficient to put [the plaintiffs] on guard and to call for them to inquire further into the cause of his condition." *Id.* at 648. Most recently, the Louisiana First Circuit found that prescription ran from the date of a cancer diagnosis and rejected the plaintiff's invocation of *contra non valentem*. *See Guerin v. Travelers Indem. Co.*, 296 So. 3d 625 (La. App. 1 Cir. 2020). In *Guerin*, the plaintiff was diagnosed with multiple myeloma in 2015, and argued that his claims, filed in 2018, were not prescribed because "it was reasonable for him to simply accept his physician's explanation in 2015 that, 'well, you know, you have it, and I don't know where it came from,' and make no further inquiries into the cause of his condition until coming across a lawyer's advertisement in a magazine in June 2018." *Id.* at 631. Consistent with *Tenorio* and *Lennie*, the court found that the plaintiff's "inaction was not reasonable in light of the knowledge that he possessed, and that his diagnosis in 2015 was constructive notice sufficient to put him on guard and to call him to inquire into the cause of his condition." *Id.* Plaintiff was thus unable to avail himself of *contra non valentem*.

The Court finds these three Louisiana appellate cases persuasive. Indeed, the Fifth Circuit recently considered this trio of cases, and emphasized the significance of a medical diagnosis in starting a plaintiff's prescriptive period. *See Butler v. Denka Performance Elastomer, LLC*, 16F.4th 427, 439-40 (5th Cir. 2021). In *Butler*, the

plaintiff alleged various health conditions resulting from chloroprene emissions from a nearby neoprene plant. *Id.* at 432. In holding that the plaintiff had adequately alleged *contra non valentem* at the pleadings stage, the court distinguished *Tenorio*, *Lennie*, and *Guerin*, as cases in which "a plaintiff's diagnosis, more than one year prior to filing suit, constitute[d] constructive notice." *Id.* at 440 (emphasis in original). The court stated that this "diagnosis" distinction is "critical," and that, because the *Butler* plaintiff "was not diagnosed or otherwise told that her symptoms were a result of excessive chloroprene emissions more than one year prior to filing suit," she was able to rely on *contra non valentem* at the pleadings stage. *Id.*

To rebut these cases, Plaintiff relies upon *Price v. Luster Products, Inc.*, in which another section of this Court found that *contra non valentem* applied because the plaintiff "was not made aware, nor had any reason to believe that the [hair relaxer] was related to her uterine fibroids until 2021." *Price v. Luster Prod. Inc.*, No. 21-1036, 2022 WL 1719274, at *3 (E.D. La. May 27, 2022). Moreover, the court noted that a Google search for the "causes of uterine fibroids" would not invariably lead the plaintiff to discover that her hair relaxer was the cause. *Id.* at *6.

> In fact, a mere google search instead suggests that the cause of uterine fibroids is unknown, and that genetics and exposure to estrogen may be contributing factors. Therefore, the fact that there may have been a journal article in 2013 suggesting that the use of hair relaxers could be related to uterine fibroids in no way demonstrates that it was unreasonable for Plaintiff not to discover the cause of her uterine fibroids earlier.

*Id.* Additionally, the court emphasized that the plaintiff presented to multiple urgent care facilities, and "Defendant's assumption that Plaintiff did not ask her physician

about the cause of her condition is unfounded." *Id.* Notably, the court concluded its analysis with the assertion that "uterine fibroids are more common in African American women than in white women, suggesting that her doctor's failure to warn her of the risks may have been a byproduct of the historic trend of African American women's medical complaints being overlooked." *Id.*

In this case, Plaintiff argues that like uterine fibroids, breast cancer has more than one potential cause. (Rec. Doc. 13, at 7–8). While this is true, Plaintiff makes no allegation that he or his wife inquired into what caused her breast cancer. The First Amended Complaint is devoid of claims of asking a doctor what could have caused breast cancer or Googling what could cause breast cancer. According to the First Amended Complaint, no physician advised them that EtO may cause breast cancer, and they "discussed their health conditions" with their son who is a chemical engineer. (Rec. Doc. 2, at 13). However, beyond these assertions, Plaintiff does not allege that he and his wife investigated or did any research into her cancer diagnosis. This is in direct contrast to the allegation in *LeBouef v. Evonik Corporation* in which the plaintiff alleges that "[s]he discussed a potential cause of cancer with her physician and, after genetic testing, he told her it was not caused by genetics. However, her physician did not offer any other possible explanations despite her inquiries." No. 22-1523 (Rec. Doc. 2, at 12). Instead, here, Plaintiff incorrectly focuses his assertions on the fact that he did not know or have access to the body of industry and scientific information regarding the dangers of EtO.

Plaintiff claims that they "did not have any reasonable access to or knowledge of the body of industry and scientific information regarding the dangers of EtO," including the 2014 NATA results. (Rec. Doc. 2, at 12). Further, Plaintiff alleges that "[n]o physician ever advised Mr. and Mrs. Jack that Mrs. Jack's cancer may have been caused by exposure to EtO as to reasonably put them on notice of their cause of action against Defendants." (*Id.* at 13). He simply claims that they "did not know anything about EtO to ask the physicians any questions about Mrs. Jack's exposure, which was also unknown to them at the time, and cancer." (*Id.*). However, Plaintiff fails to allege that he or his wife ever asked the physicians what could have caused her cancer or even made a general inquiry to them about its causation. Next, Plaintiff claims that he and his wife had no education related to chemistry beyond high school studies, and they did not know how to research information related to operation of the facility even if they wanted to. (*Id.*). Again, Plaintiff misconstrues his duty to investigate. It is not a duty to find the cause of a diagnosis and understand the technical and scientific cause and effect relationship between the chemical and the diagnosis. It is a duty to ask questions and seek answers to a medical diagnosis. It is simply a rudimentary inquiry into the possible source of the diagnosis.

For these reasons, the Court finds that Plaintiff, individually and in his capacity as beneficiary of Mrs. Jack's cause of action, had constructive notice sufficient to trigger the running of prescription at the time of her death in 2000. Therefore, *contra non valentem* does not apply, and Plaintiff's causes of action against

Shell are dismissed. As to Plaintiff's causes of action against Evonik, unless Plaintiff can show that the continuing tort doctrine applies, his claims will be dismissed.

### B. The Continuing Tort Doctrine

"The continuing tort doctrine is a jurisprudentially recognized exception to the general rules of prescription." *Watters v. Dept. of Soc. Serv.*, 15 So. 3d 1128, 1158 (La. App. 4 Cir. 2009). The doctrine provides that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So. 2d 531, 533 (La. 1982). "When the tortious conduct is continuous and gives rise 'to successive damages, prescription dates from cessation of the wrongful conduct causing the damage.'" *Id.* If the wrongful act has been completed, but the plaintiff continues to experience injury even without further conduct by the tortfeasor, no continuing tort is found. *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1005 (La. 2010).

Here, Evonik argues that the continuing tort doctrine cannot be applied to suspend prescription as to Mrs. Jack because the allegedly harmful conduct is not causing Mrs. Jack successive damages. (Rec. Doc. 12-1, at 12). As Judge Vance found before severing these cases, "the continuing tort doctrine does *not* toll the survival and wrongful-death claims . . . because Evonik's allegedly harmful conduct as to decedents is not causing successive damages to decedents or their survivors." *Ellis v. Evonik Corp.*, No. 21-1089, 2022 WL 1719196, at *9 (E.D. La. May 27, 2022). "[F]or there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." *In re Med. Rev. Panel for*

14

*Claim of Moses*, 788 So. 2d 1173, 1180 (La. 2001) (citations omitted). Therefore, Plaintiff's survival and wrongful death claims against Evonik must be dismissed as time barred. However, as to Plaintiff's own claims against Evonik, as Judge Vance found, Plaintiff has "sufficiently alleged continuing torts by Evonik," and these claims are therefore not prescribed. *Ellis*, 2022 WL 1719196, at *9. Accordingly, because Plaintiff's own negligence and nuisance claims are not time barred, the Court must next determine whether Plaintiff has pled sufficient facts to state a claim to relief that is plausible on its face.

## II.   NEGLIGENCE

First, Plaintiff alleges that Evonik is liable for negligence. (Rec. Doc. 2, at 14). Under article 2315 of the Louisiana Civil Code, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). Louisiana courts conduct a duty-risk analysis to determine whether to impose liability under article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632–33 (La. 2006). Liability requires satisfaction of five elements: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id.* at 633.

Evonik puts forth a number of arguments, including that Plaintiff's Amended Complaint fails to sufficiently plead (1) Evonik's legal duty; (2) how Evonik breached

that duty; or (3) Plaintiff's damages. This Court recently held that a different severed plaintiff properly pled a legal duty and breach. *See LeBouef v. Evonik Corporation*, No. 22-1523 (Rec. Doc. 14). Therefore, in this case, the remaining question is whether Plaintiff sufficiently pled damages. Plaintiff's survival and wrongful death claims are prescribed, so the only remaining alleged damages are Plaintiff's "fear and increased likelihood of development of cancer and other fatal and debilitating diseases." (Rec. Doc. 2, at 21).

The Fifth Circuit recognizes recovery of damages for serious mental distress arising from fear of developing cancer: "a plaintiff seeking recovery for mental anguish resulting from fear of developing a condition from a present injury must introduce evidence of his particular fears with some specificity, instead of generally indicating concern for his future health." *Smith v. A.C. & S., Inc.,* 843 F.2d 854, 855 (5th Cir. 1988); *see also Norfolk & Western Ry. v. Ayers*, 538 U.S. 135, 157 (2003) (affirming fear of cancer as an element of pain and suffering damages so long as the complainant "prove that his alleged fear is genuine and serious"). However, "the compensable injury is *not* the feared condition; instead, the compensable injury is the mental anxiety resulting from fear of developing that condition which the plaintiff endures on a daily basis." *Easson v. Velsicol Chem. Corp.*, No. 89-188, 1991 WL 220955, at *3 (E.D. La. Oct. 23, 1991).

Generally, a defendant will not be held liable under Louisiana law where its conduct is merely negligent and causes only emotional injury unaccompanied by physical injury. *Molden v. Georgia Gulf Corp.*, 465 F. Supp. 2d 606, 614 (M.D. La.

2006) (citing *Moresi v. State, Department of Wildlife and Fisheries*, 567 So. 2d 1081, 1096 (La.1990)); *see also Bonnette v. Conoco, Inc.*, 837 So .2d 1219, 1235 (2003). However, Louisiana courts will allow recovery for mental anguish absent a physical injury in special circumstances.[1] *Id.* The plaintiff must show an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Bonnette*, 837 So. 2d at 1234.

Proximity to the event, witnessing injury to others, and contemporaneous reports from reliable sources that danger is real are indicia of the reliability of claims of emotional distress. *Spencer v. Valero Ref. Meraux, LLC*, No. 2021-0383, 2022 WL 305319, at * 7 (La. App. 4 Cir. Feb. 2, 2022) (citing *Doerr v. Mobil Oil Corp.*, 935 So. 2d 231, 237 (La. App. 4 Cir. 2006)). In *Spencer v. Valero Refining Meraux*, the court held that the plaintiffs could recover for their emotional distress absent physical injuries because the suffered genuine and serious emotional distress resulting from a refinery explosion. 2022 WL 305319 at *8. The plaintiffs

> were in close proximity to the area of the refinery where the explosion occurred, a distance of less than 2,000 feet. Additionally, although they did not directly witness injury to others, they observed emergency vehicles rushing to the scene of the explosion, indicating to a reasonable person that both injury and real danger were present. Finally, although [the defendant] tested the air in the community and found it contained no dangerous chemical levels, [it] failed to contemporaneously communicate this information to the public. [The plaintiff's] concern about negative impacts on her family's health, including that of her unborn child, from the chemical release is genuine, serious and reasonable under these circumstances.

---

[1] One exception in which mental anguish may be recovered without physical injury is when a plaintiff has a separate tort claim, such as nuisance. *Morsei*, 567 So. 2d at 1095. However, as discussed below, Plaintiff has not sufficiently alleged a nuisance claim under Louisiana law.

*Id.* at *7–*8.

Additionally, in *Lester v. Exxon Mobil Corporation*, the court found that instances of a manifest injury was not required to recover for fear of cancer when "the record establishes that all eight of the plaintiffs sustained a lifetime exposure to the various radioactive isotopes in excess of 10 rems and that there is no doubt according to the medical experts that a dose in excess of 10 rems results in a risk of developing cancer." 120 So. 3d 767, 776 (La. App. 4 Cir. 2013). In that case, the plaintiffs testified that they had daily concerns and worries about the future of their health and the fact that they were at a higher risk of having cancer. *Id.* One worker experienced panic attacks and another said his doctor prescribed high blood pressure medication and gave him cream for rashes on his body due to his anxiety and fear. *Id.*

Here, Plaintiff argues that his fear of developing cancer and other fatal diseases is the result of Evonik's continuing wrongful conduct. He briefly explains:

> Mr. Jack has been and continues to be exposed to EtO from the facility at his home located at 208 East 20th, Reserve, LA 70008, where his wife also lived with him beginning in the 1970's . . . Mr. Jack is at increased risk for developing cancer and new health conditions as a result of the continued dangerous emission of EtO from the facility to which he is continuously exposed.

(Rec. Doc. 2, at 3). "The facility has continuously emitted dangerous levels of EtO that . . . continued to be breathed in by Plaintiff . . . ." (*Id.* at 12). "Mr. Jack lives approximately 2.7 miles from the facility." (*Id.* at 13). Like the plaintiffs in *Lester*, Plaintiff alleges that he has sustained a lifetime of exposure to dangerous levels of EtO. Moreover, Plaintiff, in contrast to the plaintiffs in *Spencer*, alleges that he observed injury to his wife. However, unlike the plaintiffs in *Spencer*, Plaintiff lives

approximately 2.7 miles from the facility. Additionally, Plaintiff fails to plead any facts, let alone sufficient facts, about how his fear of cancer and other diseases has manifested itself. This is in direct contrast to the plaintiffs in *Lester* who testified that they had daily concerns and worries about the future of their health. Plaintiff has not alleged that he suffers panic attacks, high blood pressure, rashes, or any other manifestations of his fear. Therefore, Plaintiff has not sufficiently pled his claimed damage of fear of developing cancer and other fatal and debilitating diseases.

## III.   NUISANCE

Plaintiff alleges that Evonik is liable for nuisance, in violation of Louisiana's vicinage articles, Louisiana Civil Code articles 667-669. (Rec. Doc. 2, at 17). Under article 667 of the Louisiana Civil Code:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 667. Mere inconvenience, though, may be permissible. Under article 668, "every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor." La. Civ. Code art. 668. But article 669 provides that not all inconveniences need be tolerated:

> If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude

established by which they are regulated, their sufferance must be
determined by the rules of the police, or the customs of the place.

La. Civ. Code art. 669.

These Code articles collectively "embody a balancing of rights and obligations
associated with the ownership of immovables." *Badke v. USA Speedway, LLC*, 139
So. 3d 1117, 1126 (La. App. 2 Cir. 2014). "As a general rule, the landowner is free to
exercise his rights of ownership in any manner he sees fit." *Id.* Indeed, a proprietor
"may even use his property in ways which occasion some inconvenience to his
neighbors." *Id.* But under article 667, "his extensive rights do not allow him to do 'real
damage' to his neighbor." *Id.* (citing *Rodrigue v. Copeland*, 475 So. 2d 1071 (La.
1985)). "[A] finding of liability under Article 667 requires either proof of personal
injury or physical damage to property or proof of the presence of some type of
excessive or abusive conduct." *Harmonia, LLC v. Felicity Prop. Co., LLC*, 311 So. 3d
521, 528 (La. App. 4 Cir. 2020) (quoting *Lodestro Co. v. City of Shreveport*, 768 So. 2d
724, 727 (La. App. 2 Cir. 2000)). A claim under any or all of these three Code articles
requires a showing of negligence. *See Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200
(5th Cir. 2000) ("[T]he 1996 amendment to Article 667 applies to Articles 668 and 669
as well, so that stating a claim under one or more of these articles now requires a
showing of negligence."). Accordingly, to assert a nuisance claim under any or all of
these articles, plaintiffs must show that "a defendant is (1) a proprietor who (2)
negligently (3) conducts 'work' on his property (4) that causes damage to his
neighbor." *See Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, No. 18-7889, 2019
WL 4111681, at *2 (E.D. La. Aug. 29, 2019) (citing *Bd. of Comm'rs of Se. La. Flood*

*Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 643 (E.D. La. 2015)).

### A. EXCESSIVE AND ABUSIVE CONDUCT

Here, given that Judge Vance found that the Original Complaint adequately alleged the negligence requirement, *Ellis*, 2022 WL 1719196, at *13, the sole question before the Court is whether Plaintiff adequately alleged real damage. Judge Vance held "plaintiffs have adequately alleged real damage, in the form of cancer, which is a higher showing than inconvenience." *Id.* However, in this case, Plaintiff does not allege that he was diagnosed with cancer, but, instead, alleges that he fears developing cancer. (Rec. Doc. 2, at 21). Because Plaintiff does not allege that Evonik caused him personal injury or property damage, Evonik argues that his nuisance claim can only survive if he has adequately alleged that Evonik engaged in excessive or abusive conduct. (Rec. Doc. 12-1, at 21–22). Evonik contends he has not done so. (*Id.* at 22). In opposition, Plaintiff asserts that he has alleged the presence of excessive or abusive conduct through Evonik's violations of the Louisiana Administrative Code Title 33, Part III. (Rec. Doc. 13, at 19).

Assuming, without deciding, that Plaintiff has alleged excessive and abusive conduct, Plaintiff nonetheless fails to sufficiently plead facts of his resulting damages from Evonik's activities. Simply concluding that he fears developing cancer and other fatal diseases without more is not sufficient. In *Taylor v. Denka Performance Elastomer, LLC*, the court found that the plaintiffs sufficiently alleged how their fear of chloroprene exposure deprived each of their enjoyment of his or her property which

constituted a nuisance claim under Louisiana law. No. 17-7668, 2018 WL 5786051, at *4 (E.D. La. Nov. 5, 2018). "[T]he plaintiffs offer not only detailed 'background facts' providing an overview of the [Pontchartrain Works Facility] and the EPA's designation of chloroprene as a likely human carcinogen, but also a factual predicate detailing how the chloroprene exposure constitutes a nuisance allegedly perpetrated as to each plaintiff." *Id.* The amended complaint included "individualized descriptions and facts detailing each plaintiff's alleged harm due to chloroprene exposure." *Id.*

Here, although Plaintiff, like the plaintiffs in *Taylor*, offers detailed background facts providing an overview of the facility and the EPA's designation of EtO as a likely human carcinogen, he fails to allege any individualized facts about how the EtO has been a nuisance to him. The Amended Complaint is devoid of any individualized descriptions and facts detailing his alleged harm. Therefore, he has not sufficiently alleged a nuisance claim under Louisiana law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Shell Oil Company's *Rule 12(b)(6) Motion to Dismiss* **(Rec. Docs. 4)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Evonik Corporation's *Rule 12(b)(6) Motion to Dismiss* **(Rec. Doc. 12)** is **GRANTED.**

**IT IS FURTHER ORDERED** that all claims of Plaintiff, Ervin Jack, Jr., individually and on behalf of his wife Leander Cook Jack, against Defendants, Shell

Oil   Company   and   Evonik   Corporation,   are   hereby   **DISMISSED   WITH**

**PREJUDICE.**

New Orleans, Louisiana, this 12th day of August, 2022.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE